UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Donte C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No. 23-cv-234 (JRT/DJF) <br><br> **REPORT AND RECOMMENDATION** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Donte C. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Because substantial evidence supports the Decision, the Court recommends Plaintiff's request for relief (ECF No. 20) be denied, Defendant's request for relief be granted (ECF No. 23), the Decision be affirmed, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for SSI on August 31, 2020.[2] (Soc. Sec. Admin. R. (hereinafter "R.") 110.)[3] At that time he was a 36-year-old man with a high school education and previous work experience as cleaner and assembly laborer. (R. 248, 272.) Plaintiff alleged he became disabled on July 1, 2014 (R. 267), resulting from post-traumatic stress disorder, depression, and chronic low back pain (R. 271).

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

---

[2] Plaintiff appears to have initiated his application on August 31, 2023 (*see* R. 246) but did not file it until October 20, 2023 (R. 248).

[3] The Social Security administrative record (R.) is filed at ECF No. 8. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's application for SSI initially (R. 138-141) and on reconsideration (R. 151-153). On January 20, 2022, at Plaintiff's request (*see* R. 168), an

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 34-66). Plaintiff and a vocational expert testified at the hearing. (R. 35.) Plaintiff was represented by an attorney. (R. 34.) After the hearing, the ALJ considered whether Plaintiff was disabled between August 31, 2020, his application date, and March 16, 2022, the date of the ALJ's Decision. (R. 11- 24.)

The ALJ determined that Plaintiff had: (1) a non-severe history of proximal phalangeal fracture of the left fifth finger (R. 13); and (2) multiple physical and mental impairments, which at least in combination were severe: asthma; degenerative disc disease of the lumbar spine; alcohol abuse; marijuana abuse; generalized anxiety disorder ("GAD"); major depressive disorder ("MDD"); and post-traumatic stress disorder ("PTSD") (R. 13). The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 14-15.) The ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 16-23), and determined that:

> [Plaintiff] has the [RFC] to perform a range of sedentary work as defined in 20 CFR 416.967(a) such that he can lift and carry up to 10 pounds occasionally, can stand and walk with normal breaks for about 2 hours in an 8-hour work day, and can sit with normal breaks for about 6 hours in an 8-hour work day with the option to stand for 10 minutes after every 1 hour of sitting as long as he is not off-task or away from the workstation. He can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, can frequently balance, and can occasionally stoop, crouch, and crawl. He can have no work at unprotected heights or around dangerous machinery, and can have occasion [sic] exposure to extreme cold, extreme heat, humidity, vibration, and strong odors, fumes, and poor ventilation. He can perform simple, repetitive tasks with occasional interaction with co-workers that does not require group tasks or collaboration, and can have brief, superficial interaction with supervisors and with the public. He requires a job that would permit him to be off-task 10 percent of the time during an 8-hour workday due to mental health symptoms.

(R. 15.) Next, the ALJ determined Plaintiff does not have any past relevant work. (R. 23.)

4

During Plaintiff's hearing, the ALJ solicited testimony from the vocational expert regarding whether a hypothetical individual with Plaintiff's age, education, vocational background, and RFC—including the limitation that Plaintiff be allowed to be off task ten percent of the time during an eight-hour workday—could make a successful adjustment to other work. (R. 57-58.) The vocational expert responded that the hypothetical individual could perform work as a stuffer (Dictionary of Occupational Titles ("DOT") # 731.685-014), final assembler (DOT # 713.687-018), and inspector (DOT # 669.687-014)—all positions that exist in significant numbers in the national economy. (R. 58.)

The ALJ then asked the vocational expert whether the hypothetical person would still be able to perform any of those jobs if the individual was likely to be absent from work one day per month on a consistent basis, including needing to arrive late or leave early. (R. 58.) The vocational expert responded that the hypothetical individual would not be able to perform any of the jobs, even at the sedentary level. (R. 59.) The vocational expert explained that the tolerance for absences in unskilled work, including the jobs she listed, was three to six days per year. (R. 59.)

Plaintiff's counsel then asked the vocational expert what the tolerance was for off-task behavior "as a cumulative total of an eight-hour day." (R. 59.) The vocational expert responded, "Well, most people can produce an average amount with average quality to keep their jobs if they are not off task 15 percent of the day or more." (R. 59.) The exchange between Plaintiff's counsel and the vocational expert continued:

> **Counsel**: Right, but you're injecting additional factors into the hypothetical. You're talking about the average person. And so, we don't know whether this hypothetical person is the average person. Does that change your answer, [vocational expert]?"
>
> **Vocational Expert**: No. To the best of my knowledge, most people can keep their job if they are not off task 15 percent of time or more.

5

**Counsel**: Okay. Now, that assumes that this 15 percent off task is spread throughout the entire day, correct?

**Vocational Expert**: It is assumed 15 percent total.

**Counsel**: Okay. So what I'm trying to get my head around is when you say 15 percent total, 15 percent of a total day is 72 minutes. So, perhaps I can illustrate the possible absurdity of the comment. A person can't come to work and start their shift at 9:00 am and sit there for an hour and 12 minutes, can they?

**Vocational Expert**: I would think not. I think that would be noticeable. Employers aren't really tolerating someone being off task. They're not noticing it. And most people can answer their phone or text or do whatever 15 percent of the time and still maintain employment.

**Counsel**: Well, now you're saying something different. You're saying they can do these things 15 percent of the time and still maintain employment. I can tell you, if I answered my phone 15 percent of the time it rang I'd be out of business real fast.

**Vocational Expert**: Yes, me too.

**Counsel**: So, do you want to clarify, [vocational expert]? Do you want to clarify what you meant?

**Vocational Expert**: Yes, what I mean is, most people can answer their phone, do whatever, 15 percent of the time if they don't leave the workstation and it is not noticed by supervisors because they can still produce an average amount with average quality. And we're talking about unskilled work.

**Counsel**: Right. But you're injecting additional factors into the hypothetical like if the supervisor doesn't notice. So, let's say that the employer is particular [sic] observant about their employees and they notice a person off task let's say for ten minute periods three times a day, and every day of the week, and outside of normally scheduled breaks at times the employer is expecting them to work. Can they maintain employment?

**Vocational Expert**: In most cases, no.

…

**Counsel**: Okay. [Vocational expert], can a person who is doing any of these three jobs you testified to get up from their workstation at a time that an employer is expecting them to be at their workstation working and doing their job and just walk away from up to half hour at a time outside of normally scheduled breaks?

**Vocational Expert**: No, they can't.

6

> **Counsel**: Can they do what I just described for 20-minute periods? Just randomly, outside of normally scheduled breaks.
>
> **Vocational Expert**: In an unskilled work, you cannot leave your workstation except during your normally scheduled [breaks].
>
> **Counsel**: Okay. So, if the off-task behavior was exhibited in the form of this hypothetical person standing up and walking away from their workstation, that would be preclusive, right?
>
> **Vocational Expert**: Yes, well, not for one time, maybe, but yes, if that was a continued behavior.
>
> **Counsel**: Let's say continued behavior means it's once a day for 20 minutes every day of the week. Is that what you mean by what you just said?
>
> **Vocational Expert**: Well, or every other day for ten minutes. You can't leave your workstation except for breaks.
>
> **Counsel**: You've made your point very clear. Now, let me illustrate a different scenario. Let's say this person's at their workstation, they're exactly where their employer expects them to be, but they sit there with their hands crossed and they're not working, and the employer is expecting them to work, and they're not working, and the employer is expecting them to work, what are the implications of doing that for up to a half hour at a time, once a day, but every day of the week?
>
> **Vocational Expert**: If they get caught doing that, they would be talked to, and if they continued to do it, they would lose their job.
>
> **Counsel**: So, kind of like three strikes and you're out scenario?
>
> **Vocational Expert**: Sort of, yes.
>
> **Counsel**: Okay. And would the same response from the employer be forthcoming if that person was doing this for 20-minute periods once per day every day of the week? At their workstation but not actually engaged in their work activities at a time the employer was expecting them to be?
>
> **Vocational Expert**: If they were caught doing that, they would not keep employment.

(R. 59-61, 63-64.) The vocational expert based her testimony related to time spent off task on her forty years of professional experience of job placement of people with disabilities. (R. 65.)

Based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy. (R. 23-24.) The ALJ concluded on that basis that Plaintiff is not disabled. (R. 24) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-4), and this lawsuit followed.

## DISCUSSION

### I.  Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports

each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.   Analysis

Plaintiff argues the ALJ committed reversible error at step five of the sequential analysis by "failing to recognize that the testimony of the Vocational Expert rendered the Plaintiff unemployable." (ECF No. 20 at 6.) Plaintiff does not dispute that his RFC includes a limitation that permits him "to be off-task 10 percent of the time during an 8-hour workday" (R. 15), or that the ALJ included this limitation in his hypothetical to the vocational expert (R. 57, "[T]he individual would likely be off task 10 percent of the time during an eight-hour workday due to mental health symptoms."). Based on that hypothetical, the vocational expert identified as possible jobs Plaintiff could perform: (1) stuffer, DOT # 731.685-014; (2) final assembler, DOT # 713.687-018; and (3) inspector DOT # 669.687-014. (R. 24.) Plaintiff nevertheless contends her RFC is job preclusive, because the vocational expert "essentially testified that being off task 10% of the workday would preclude the jobs she identified in response to the ALJ's hypothetical questions." (ECF No 20 at 9.) Plaintiff agues on these grounds that the ALJ's Decision is not based on substantial evidence and asks the Court to remand this matter for the sole purpose of calculating his disability benefits. (*Id.* at 9, 14.)

Defendant argues the ALJ satisfied her burden at step five of the sequential analysis and properly found Plaintiff is not disabled. (ECF No. 23 at 5-7.) She contends the vocational expert's

9

responses to Plaintiff's counsel's increasingly attenuated modifications to the ALJ's original hypothetical questions does not produce evidence, let alone evidence that undermines the ALJ's Decision. (*Id.*) Defendant asks the Court to affirm the Decision on the ground that substantial evidence supports the ALJ's finding that Plaintiff is not disabled. (*Id.*)

At step five of the sequential analysis, the ALJ may rely on a vocational expert's testimony to meet her burden of proof showing that jobs exist in the national economy that a claimant can perform. *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). To constitute substantial evidence, the vocational expert's testimony must be "based on a hypothetical [question] that captures the concrete consequences of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted). The hypothetical need include only those impairments that the ALJ has found are substantially supported by the record as a whole. *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996). A vocational expert's answer to a hypothetical question that mischaracterizes a claimant's symptoms or limitations does not constitute substantial evidence. *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007).

Here, the ALJ asked the vocational expert a hypothetical question that included all of the limitations she felt supported by the record, including the limitation that Plaintiff required a job that would permit him to be off task 10 percent of the workday. (R. 57-58.) The vocational expert identified three jobs existing in significant numbers in the national economy that Plaintiff can perform despite his impairments and resulting limitations. (R. 58.) In response to additional questioning by Plaintiff's counsel, the vocational expert explained the boundaries of what it means to be off task. (R. 59-61, 63-64.)

Plaintiff argues this follow-up testimony undercuts the vocational expert's response to the ALJ's original hypothetical question that Plaintiff can perform other work that exists in the

national economy, because she testified that time off task is only allowed when an employer does not actually notice it. (ECF No. 20 at 12-14.) But the follow-up questions Plaintiff's counsel asked the vocational expert required her to assume hypothetical scenarios involving various off-task behaviors not supported by the record. (*See, e.g.*, R. 63, asking vocational expert to assume hypothetical person stands up and walks away from his workstation; R. 64, asking vocational expert to assume hypothetical person sits idly at his workstation for up to half an hour at a time.) A claimant must carry the burden to prove her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). Plaintiff points to no evidence in the record supporting any additional limitation that he be allowed to intermittently leave his workstation, or sit idly at his workstation for any certain amount of time. A vocational expert's testimony in response to unsupported hypothetical questions does not constitute substantial evidence. *Howe*, 499 F.3d at 842.

In response to the ALJ's original, properly supported hypothetical question, the vocational expert clearly stated that, based on her experience, the three jobs she identified would permit Plaintiff to be off task 10 percent of the workday. (R. 58, 65.) Because the ALJ's hypothetical question included all of Plaintiff's limitations, her reliance on the vocational expert's testimony that Plaintiff can perform other work that exists in the national economy constitutes substantial evidence. *Scott*, 855 F.3d at 857. The vocational expert's subsequent testimony in response to counsel's unsupported hypothetical questions does not undermine her original testimony, regardless of how Plaintiff construes it. *Howe*, 499 F.3d at 842. The ALJ's interpretation of the vocational expert's testimony was reasonable. To the extent Plaintiff disagrees with how the ALJ weighed the evidence in the record, including the vocational expert's testimony, it is not the

Court's role to reweigh it. *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence").

Because substantial evidence supports the ALJ's finding that Plaintiff can perform other work that exists in substantial numbers in the national economy, the Court must affirm it. *Perks*, 687 F.3d at 1091. For these reasons the Court recommends Plaintiff's request for relief be denied, Defendant's request for relief be granted, the Decision be affirmed, and this matter be dismissed with prejudice.

## REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's Request for Relief (ECF No. [20]) be **DENIED**;

2. Defendant's Request for Relief (ECF No. [23]) be **GRANTED**;

3. The Decision be **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) be **DISMISSED WITH PREJUDICE**.

Dated: November 14, 2023                    *s/ Dulce J. Foster*
                                            DULCE J. FOSTER
                                            United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).